**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 15, 2016[*]
Decided June 15, 2016

**Before**

DIANE P. WOOD, Chief Judge

RICHARD A. POSNER, Circuit Judge

JOEL M. FLAUM, Circuit Judge

No. 15-1398

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee*, | Court for the Northern District of Illinois, |
| | Eastern Division. |
| *v*. | |
| | No. 09 CR 115-1 |
| RONALD HADDAD, JR., | |
| *Defendant-Appellant*. | Virginia M. Kendall, |
| | *Judge*. |

**O R D E R**

Ronald Haddad, Jr., was found guilty by a jury on multiple counts of using the Postal Service or e-mail to send threatening communications. *See* 18 U.S.C. §§ 875(c), 876(c). He was sentenced to a total of 150 months' imprisonment. Haddad now appeals and is representing himself after twice refusing our offer to appoint counsel. We affirm his convictions and sentence.

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

Haddad was indicted after more than two dozen packages containing threatening letters and suspicious powders or liquids were sent anonymously to elected officials in Chicago and to high-ranking oil executives in Texas and California. As his first ground for appeal, Haddad argues that the district court did not have jurisdiction over his case, because, he insists, the statute authorizing district courts to preside over criminal prosecutions, *see* 18 U.S.C. § 3231, is invalid. The federal government, Haddad says, lacks authority to prosecute persons for conduct committed outside of Washington, D.C., and the U.S. territories. As we have said previously, contentions like these are frivolous. *See United States v. Collins*, 510 F.3d 697, 698 (7th Cir. 2007).

Haddad next asserts that the government's evidence was too weak to convict him. Haddad explains that he had "no mens rea and no criminal intent" and that the government lacked any direct, forensic evidence. To secure convictions under § 875(c) and § 876(c), it would have been enough for the government to prove that Haddad had sent communications that were intended and reasonably perceived as being threatening (that the communications were sent by the mail and or through interstate commerce via e-mail was undisputed). *See* 18 U.S.C. §§ 875(c), 876(c); *Elonis v. United States*, 135 S. Ct. 2001, 2012 (2015) (declining to decide whether recklessness standard also would satisfy the mens rea requirement of §875(c)); *United States v. Parr*, 545 F.3d 491, 498–500 (7th Cir. 2008) (declining to decide whether, in light of *Virginia v. Black*, 538 U.S. 343, 359–60 (2003), this court's objective test for defining "threat" has been replaced, at least in part, by asking if communication was subjectively intended to be a threat). Our review is for whether the government introduced sufficient evidence, when viewed "in the light most favorable to the prosecution, to enable a rational trier of fact to find the essential elements of the charged crime beyond a reasonable doubt." *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

We conclude that there was sufficient evidence here. Witnesses testified to the receipt of each letter, which included statements such as, "We, the people, are going to stand up to you and fucking kill you" and, "We will so happily and without mercy kill your families." And suspicious powders and oils (which turned out to be harmless) were included with many of the letters. These letters, which were sent to Chicago politicians and Texas oil executives, rant about specific incidents of political corruption in Chicago and perceived collusion between politicians and oil executives to raise gas prices. Another witness testified to receiving e-mails from a "Ron Haddad, Jr." discussing the same idiosyncratic topics as in the anonymous letters, using the same distinctive language, and alluding to the e-mail sender's campaign to intimidate and harass the targets of those letters. Investigators obtained records showing that "Ronald lastname"

had registered for that e-mail address and that the e-mails were sent from an IP address assigned to Haddad's home. Investigators then recovered from Haddad's home more letters and, from his computer, more e-mails containing the same distinctive topics and language. All this, taken together, was enough for a rational jury to infer that Haddad sent communications that the recipients reasonably would interpret as being threatening and that he intended that outcome. *See United States v. Magers*, 535 F.3d 608, 611 (7th Cir. 2008) (explaining that reasonable person would view letter containing powdery substance as threat); *United States v. White*, 810 F.3d 212, 228–29 (4th Cir. 2016) (concluding that tracing threatening e-mails to defendant's IP address was sufficient evidence from which jury could infer that defendant had authored them), *cert. denied*, 2016 WL 1134627 (2016). And contrary to Haddad's argument on appeal, direct, forensic evidence is not necessary when there is enough circumstantial evidence to convict. *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003) ("[W]e have never questioned the sufficiency of circumstantial evidence in support of a criminal conviction."); *United States v. Moore*, 572 F.3d 334, 337 (7th Cir. 2009) ("A verdict may be rational even if it relies solely on circumstantial evidence."); *United States v. Starks*, 309 F.3d 1017, 1021–22 (7th Cir. 2002) (same).

Finally, Haddad argues that the district court erred by "limiting and banning" his right to counsel. But Haddad was represented by five different attorneys, three appointed and two retained. All either asked to withdraw because of Haddad's lack of cooperation or were fired by Haddad despite many warnings from the district judge that she would not continue appointing attorneys without limit. Haddad's fifth lawyer represented him throughout the trial and filed a sentencing memorandum, but she withdrew before the sentencing hearing because Haddad had decided that he wanted yet another attorney and was refusing to cooperate with her. At that point the district court concluded that Haddad had waived his right to counsel by obstinately refusing to work with the many lawyers made available to him. The court then declined to appoint yet another attorney, and that decision was well within the court's discretion, *see United States v. Traeger*, 289 F.3d 461, 475 (7th Cir. 2002); *United States v. Oreye*, 263 F.3d 669, 670–71 (7th Cir. 2001). It may be that Haddad is unhappy with the performance of counsel, but any claim of ineffective assistance would best be presented in a collateral proceeding where a record can be developed. *See Massaro v. United States*, 538 U.S. 500, 504–05 (2003); *Ramirez v. United States*, 799 F.3d 845, 853 (7th Cir. 2015).

We have considered Haddad's remaining contentions, and none has merit.

AFFIRMED.